BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
ALEX J. TRAMONTANO (276666)
tramontano@whafh.com
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

*Attorneys for Plaintiff*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GROPPO, Derivatively on Behalf of Nominal Defendant SKYWORKS SOLUTIONS, INC., | Case No. _____ |
| Plaintiff, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| LIAM K. GRIFFIN, KRIS SENNESAEL, CHRISTINE KING, ALAN S. BATEY, KEVIN L. BEEBE, ERIC J. GUERIN, SUZANNE E. MCBRIDE, DAVID P. MCGLADE, ROBERT A. SCHRIESHEIM, and MARYANN TURCKE, | |
| Defendants, | |
| and | |
| SKYWORKS SOLUTIONS, INC., | |
| Nominal Defendant. | |

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Robert Groppo ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Skyworks Solutions, Inc. ("Skyworks" or the "Company"), against current and former members of the Company's Board of Directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) breach of fiduciary duties and violations of federal law. Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, conference call transcripts and announcements made by Defendants, filings with the United States Securities and Exchange Commission ("SEC"), press releases published by and regarding Skyworks, legal filings, news reports, securities analysts' reports about the Company, filings in the securities class action captioned *Nunez v. Skyworks Solutions, Inc., et al,* Case No 8:25-cv-00411-DOC-JDE (C.D. Cal.) (the "Securities Class Action"), and other publicly available information.

## NATURE OF THE ACTION

1.    This is a shareholder derivative action brought by Plaintiff on behalf of Skyworks against certain of its officers and members of the Company's Board (the "Individual Defendants")[1] for breaches of their fiduciary duties between at least July 30, 2024 and February 5, 2025, inclusive (the "Relevant Period"), and violations of federal securities laws, as set forth below.

2.    Headquartered in Irvine, California, Skyworks is a purported leading

---

[1]  Individual Defendants are Liam K. Griffin ("Griffin"), Kris Sennesael ("Sennesael"), Christine King ("King"), Alan S. Batey ("Batey"), Kevin L. Beebe ("Beebe"), Eric J. Guerin ("Guerin"), Suzanne E. McBride ("McBride"), David P. McGlade ("McGlade"), Robert A. Schriesheim ("Schriesheim"), and Maryann Turcke ("Turcke"). The Individual Defendants, together with Skyworks, are "Defendants."

developer, manufacturer and provider of analog and mixed-signal semiconductor products and solutions for numerous applications, including aerospace, automotive, broadband, cellular infrastructure, connected home, defense, entertainment and gaming, industrial, medical, smartphone, tablet, and wearables.

3.    According to the Company's annual report filed on a Form 10-K with the SEC on November 15, 2024 (the "2024 10-K"), "[o]ver the past two decades, Skyworks has made important investments to address key network technologies, from cellular to advanced Wi-Fi®, enhanced GPS, and Bluetooth®, among others."

4.    Some of the Company's key customers include Amazon, Apple Inc. ("Apple"), General Electric, Google, Microsoft, and Samsung, among others.

5.    Throughout the Relevant Period, the Individual Defendants made numerous materially false and misleading statements related to the Company's anticipated revenue for 2025. The Individual Defendants repeatedly touted the Company's ability to grow its mobile business and capitalize on its potential growth and assured investors that Skyworks was investing in new technologies to diversify its portfolio of offerings.

6.    For instance, on July 30, 2024, the first day of the Relevant Period, the Company issued a press release announcing its financial results for the third quarter of 2024 (the "3Q24 Earnings Release"), wherein Defendant Griffin was quoted as stating, in relevant part, that "Skyworks generated solid results and strong profitability consistent with our guidance," "[e]xiting the June quarter, our mobile business is ramping up while our broad markets business continues to recover," and "[o]ver the medium-to-long-term, we expect generative [artificial intelligence] applications will migrate to the edge, including the smartphone, driving a meaningful replacement cycle and leading to higher levels of RF complexity."

7.    The 3Q24 Earnings Release also quoted Defendant Sennesael, who touted the Company's anticipated future revenue, stating, in part:

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

For the September quarter, we expect revenue to be $1.00 billion to $1.04 billion with non-GAAP diluted earnings per share of $1.52 at the mid-point of the revenue range[.] We expect our mobile business to be up approximately 20% sequentially, as demand and supply patterns appear to be normalizing. In broad markets, we expect modest improvement, representing three consecutive quarters of sequential growth. In addition, given our solid capital structure and strong year-to-date cash flow generation, we are announcing another increase to our quarterly dividend.

8.      On the same day, Skyworks hosted an earnings call for investors and analysts to discuss the Company's financial results for the third quarter of 2024 (the "3Q24 Earnings Call"). During the 3Q24 Earnings Call, Defendant Sennesael, in response to a question about Skyworks' future revenue guidance, stated, in relevant part, "So we only guide 1 quarter at a time, and I would really stick with that. But yes, it's clear that we do expect further sequential growth going into the December quarter, but we will guide next quarter on that."

9.      However, in reality, throughout the Relevant Period, Skyworks was experiencing issues with its largest customer, Apple, and the Individual Defendants were overstating the Company's position and ability to make a profit on artificial intelligence ("AI") in the smartphone upgrade cycle. Accordingly, the Company's anticipated revenue for 2025 was materially false and misleading.

10.     The truth was revealed on February 5, 2025, when the Company issued a press release announcing its financial results for the first quarter of 2025 (the "1Q25 Earnings Release"). In the 1Q25 Earnings Release, the Company revealed disappointing financial results for the first quarter and lower-than-anticipated revenue

guidance for the second quarter of 2025. The Company credited these disappointing results to a "competitive landscape" that had "intensified" in recent years. Defendant Sennesael discussed the decline in revenue guidance and the Company's plans during the 1Q25 Earnings Release, stating:

> For the March quarter, we expect revenue between $935 million to $965 million, with non-GAAP diluted earnings per share of $1.20 at the mid-point of the revenue range[.] We anticipate a mid-to-high teens sequential decline in mobile, consistent with historical seasonal patterns. In broad markets, we expect additional sequential and year-over-year growth.
>
> In addition, our board of directors has approved a new $2 billion stock repurchase program as part of our disciplined capital allocation strategy.

11.     In the earnings call hosted for investors and analysts on the same day (the "1Q25 Earnings Call"), Defendant Sennesael stated, in relevant part:

> Now let's move on to our outlook for Q2 of fiscal 2025. We anticipate revenue of $935 million to $965 million. We expect our mobile business to decline mid- to high teens sequentially, in line with historical seasonality. In broad markets, we anticipate additional sequential growth and a further improvement in year-over-year growth.

12.     On this news, Skyworks' stock price fell $21.48 per share, or approximately 24%, from a closing price of $87.08 per share on February 5, 2025, to a closing price of $65.60 per share on February 6, 2025.

13.     As set forth herein, throughout the Relevant Period the Individual

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Defendants breached their fiduciary duties by issuing, causing the issuance of, and/or failing to correct the materially false and/or misleading statements and omissions of material fact to the investing public concerning the Company's business, operations, and prospects. Specifically, the Individual Defendants failed to disclose, inter alia, that: (i) the Individual Defendants did not have reliable information on the Company's projected revenue outlook and anticipated growth; (ii) the Individual Defendants had not minimized the risks from macroeconomic fluctuations and smartphone upgrade cycles; (iii) Skyworks' longstanding relationship with Apple did not guarantee that Apple would continue its relationship with the Company for its anticipated launch of the newest iPhone; and (iv) as a result of the foregoing, the Company's public statements regarding its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

14. Furthermore, as detailed herein, the Individual Defendants breached their fiduciary duties by causing Skyworks to repurchase its own stock at prices that were artificially inflated due to the foregoing misrepresentations during the Relevant Period.

15. As a result of the foregoing, the Securities Class Action was filed against the Company and Defendants Griffin and Sennesael on March 4, 2025, in the United States District Court for the Central District of California.

16. As a direct and proximate result of the Individual Defendants' misconduct, the Company has incurred significant financial losses, including the cost of defending and paying class-wide damages in the Securities Class Action, as well as additional losses, including reputational harm and loss of goodwill.

17. Moreover, in light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in fraud, the substantial likelihood of the directors' liability in this derivative action and Defendants' liability in the Securities Class Action, their

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

being beholden to each other, their longstanding business and personal relationships with each other, and their not being disinterested and/or independent directors, a majority of Skyworks' Board cannot consider a demand to commence litigation against themselves and the other Individual Defendants on behalf of the Company with the requisite level of disinterestedness and independence. Accordingly, Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R.§240.10b-5) and Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)).

19.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

20.    This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

21.    In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

22.    Venue is proper in this District pursuant to Section 27(a) of the Exchange Act and 28 U.S.C. § 1391 because a substantial portion of the acts and omissions alleged herein, including the dissemination of materially false and misleading information, occurred in this District, Skyworks is headquartered in this District, Defendants have received substantial compensation in this District by engaging in

///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

numerous activities that had an effect in this District, and the Securities Class Action is pending in this District.

## **PARTIES**

### *Plaintiff*

23.    Plaintiff is, and has been at all relevant times, a continuous shareholder of Skyworks.

### *Nominal Defendant*

24.    Nominal Defendant Skyworks is a Delaware corporation with its principal executive offices located at 5260 California Avenue, Irvine, California 92617. Skyworks' common stock is traded on the NASDAQ Global Select Market under the ticker symbol "SWKS."

### *Individual Defendants*

25.    Defendant Griffin served as Chairman of the Board from May 2021 until February 2025, as Chief Executive Officer ("CEO") of the Company from May 2016 until February 2025, and as President of the Company from May 2014 until February 2025. According to the Company's annual proxy statement filed on a Schedule 14A with the SEC on March 28, 2025 (the "2025 Proxy"), Defendant Griffin received $18,096,527 in compensation from the Company in 2024.

26.    Defendant Sennesael has served as Senior Vice President and Chief Financial Officer of the Company since August 2016. According to the 2025 Proxy, Defendant Sennesael received $5,324,427 in compensation from the Company in 2024.

27.    Defendant King has served as a director of the Company since 2014 and as Chairman of the Board since February 2025. King also serves as Chair of the Company's Compensation Committee and as a member of the Company's Audit Committee. According to the 2025 Proxy, Defendant King received $397,542 in compensation from the Company in 2024.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

28.     Defendant Batey has served as a director of the Company since 2019. Batey also serves as a member of the Company's Compensation Committee. According to the 2025 Proxy, Defendant Batey received $322,542 in compensation from the Company in 2024.

29.     Defendant Beebe has served as a director of the Company since 2004. Beebe also serves as Chair of the Company's Nominating and Corporate Governance Committee. According to the 2025 Proxy, Defendant Beebe received $327,542 in compensation from the Company in 2024.

30.     Defendant Guerin has served as a director of the Company since 2022. Guerin also serves as a member of the Company's Audit Committee. According to the 2025 Proxy, Defendant Guerin received $327,542 in compensation from the Company in 2024.

31.     Defendant McBride has served as a director of the Company since 2022. McBride also serves as a member of the Company's Nominating and Corporate Governance Committee. According to the 2025 Proxy, Defendant McBride received $320,042 in compensation from the Company in 2024.

32.     Defendant McGlade has served as a director of the Company since 2005. McGlade also serves as Chair of the Company's Audit Committee and as a member of the Company's Nominating and Corporate Governance Committee. According to the 2025 Proxy, Defendant McGlade received $350,042 in compensation from the Company in 2024.

33.     Defendant Schriesheim has served as a director of the Company since 2006. Schriesheim also serves as a member of the Company's Audit Committee and Compensation Committee. According to the 2025 Proxy, Defendant Schriesheim received $337,542 in compensation from the Company in 2024.

34.     Defendant Turcke has served as a director of the Company since 2023. Turcke also serves as a member of the Company's Nominating and Corporate

Governance Committee. According to the 2025 Proxy, Defendant Turcke received $320,042 in compensation from the Company in 2024.

### FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

35.    By reason of their positions as officers and/or directors of Skyworks, and because of their ability to control the business and corporate affairs of Skyworks, the Individual Defendants owed Skyworks and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Skyworks in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Skyworks and its shareholders.

36.    Each director and officer of the Company owes to Skyworks and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

37.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Skyworks, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

38.    To discharge their duties, the officers and directors of Skyworks were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

39.    Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Skyworks, the absence of good faith on their part, or a reckless

disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

40. As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

41. To discharge their duties, the officers and directors of Skyworks were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Skyworks were required to, among other things:

(i) Ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of California and the United States, and pursuant to Skyworks' own Code of Business Conduct and Ethics (the "Code of Conduct");

(ii) Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

(iii)    Remain informed as to how Skyworks conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(iv)    Establish and maintain systematic and accurate records and reports of the business and internal affairs of Skyworks and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(v)    Maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Skyworks' operations would comply with all applicable laws and Skyworks' financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(vi)    Exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(vii)    Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(viii)    Examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

42.    Each of the Individual Defendants further owed to Skyworks and the shareholders the duty of loyalty requiring that each favor Skyworks' interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

43.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Skyworks and were at all times acting within the course and scope of such agency.

44.     Because of their advisory, executive, managerial, and directorial positions with Skyworks, each of the Individual Defendants had access to adverse, non-public information about the Company.

45.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Skyworks.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

46.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

47.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

48.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company, purposefully, recklessly, or negligently, to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

49.     In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors of Skyworks, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

50.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

51.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Skyworks and at all times acted within the course and scope of such agency.

## **SKYWORKS' CODE OF CONDUCT**

52.     Skyworks' Code of Conduct applies to the Company's Board, officers, and employees, as well as any "independent contractors, consultants, and business partners who work on behalf of Skyworks."

53.     The Code of Conduct begins with a letter from the Company's CEO and President, non-party Philip Brace ("Brace"), which states, in relevant part:

> Skyworks seeks to foster and maintain a culture of compliance with applicable laws, rules, and regulations, and the highest standards of ethics and business conduct. Conducting business with integrity, honesty, and professionalism each and every day is a foundational characteristic of Skyworks. As an employee, you are expected to help

promote this culture of compliance, and to know, understand, and live up to this Code.

54.    Under the section titled "Conflicts of Interest," the Code of Conduct states, in pertinent part:

> You might choose to participate in legitimate financial, business, or other activities outside the scope of your job. Those activities must be free of any actual or apparent conflict with your responsibilities to Skyworks. A conflict of interest may occur when a personal activity interferes with the interests of Skyworks or makes it difficult for you to act in the best interest of Skyworks. A conflict of interest may also arise when you personally receive, or when you give or offer to give to others, benefits that are improper given your role in Skyworks.

> You should avoid any relationship that would cause an actual or apparent conflict of interest with your duties and responsibilities to Skyworks. In addition, you must disclose to Skyworks any circumstance that you believe might raise doubt regarding your ability to act objectively and in Skyworks' best interest.

55.    Under the section titled "Compliance with All Laws, Rules, and Regulations," the Code of Conduct states, in relevant part:

> Skyworks is subject to laws, rules and regulations, both in the U.S. and abroad, the violation of which could subject Skyworks to significant risk. Obeying the law, both in letter and in spirit, is the foundation on which Skyworks' ethical standards are built. This includes, without limitation, laws covering:

- commercial bribery, kickbacks and corruption;
- copyrights, trademarks and trade secrets;
- information privacy;
- insider trading;
- illegal political contributions;
- antitrust, collusion, and other anticompetitive practices;
- foreign corrupt practices;
- environmental hazards;
- document retention and destruction;
- financial reporting;
- employment discrimination or harassment;
- occupational health and safety; or
- misuse of corporate assets.

You are expected to understand and comply with all laws, rules, and regulations applicable to Skyworks and to you as an employee. If any doubt exists about whether a course of action is lawful and appropriate, you should seek advice immediately from your supervisor or a member of Skyworks' legal department.

56.   Under the section titled "Full, Fair, Accurate, Timely, and Understandable Disclosures, the Code of Conduct states:

In order to ensure that all business records and financial reports are accurate, complete, understandable, and contain no omissions or false or misleading information, Skyworks maintains internal controls and

procedures designed to provide reasonable assurance of:

- reliability of financial reporting in compliance with generally accepted accounting principles in the U.S.; and
- compliance with all applicable laws and regulations.

Skyworks' filings with, and submissions to, the SEC must be complete, fair, accurate, timely, and understandable. Employees who provide information for such filings and reports must take this responsibility seriously and provide prompt and truthful answers to inquiries along these lines.

## SKYWORKS' AUDIT COMMITTEE CHARTER

57.     Pursuant to Skyworks' Audit Committee Charter, the primary functions of the Company's Audit Committee are to "oversee (i) the audit of the financial statements of Skyworks Solutions, Inc. (the "Corporation") provided to the Securities and Exchange Commission (the "SEC"), the Corporation's shareholders and the general public, (ii) the Corporation's internal financial and accounting processes, and (iii) the independent audit process."

58.     In the section titled "Responsibilities and Duties," the Audit Committee charter tasks Skyworks' Audit Committee with the following responsibilities and duties, among others:

Document Review

1. Review and assess the adequacy of this Charter as conditions dictate, but at least annually, and recommend any proposed changes to this Charter to the Board for approval.

2. Review with representatives of management and representatives of the independent accounting firm the Corporation's audited annual financial statements prior to their filing as part of the Corporation's annual report on Form 10-K. After such review and discussion, the Committee shall recommend to the Board whether such audited financial statements should be included in the Corporation's annual report on Form 10-K. The Committee shall also review with representatives of management and representatives of the independent accounting firm the Corporation's interim financial statements prior to their inclusion in the Corporation's quarterly reports on Form 10-Q.

3. Review with management and the independent accounting firm significant financial reporting issues and judgments made in connection with the preparation of the Corporation's financial statements, including: (i) any significant changes in the Corporation's selection or application of accounting principles; (ii) any  significant issues or changes regarding accounting and auditing principles or practices; (iii) any significant issues regarding the adequacy of the Corporation's internal controls; (iv) the development, selection and disclosure of critical accounting estimates; and (v) analyses of the effect of alternative assumptions, estimates or generally accepted accounting principles ("GAAP") methods on the Corporation's financial statements.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

4. Discuss with management and the independent accounting firm the effect of regulatory and accounting initiatives as well as off-balance sheet structures on the Corporation's financial statements.

5. Discuss with management the quarterly earnings press releases, including "pro forma" and other "adjusted" non-GAAP information, as well as financial information and earnings guidance provided to analysts, rating agencies and others.

6. Meet periodically to review with management and the independent accounting firm their views on the Corporation's major financial risk exposures, including the Corporation's risk assessment and risk management policies, and the steps management has taken to monitor and control such exposures.

Independent Accounting Firm Oversight. . . .

2. Specifically identify and approve in advance all non-audit services performed by the independent accounting firm; provided, however, that de minimis non-audit services may instead be approved in accordance with applicable SEC rules. Conduct a periodic review of any ongoing non-audit services to review and approve their continued provision and scope. All non-audit services performed by the independent accounting firm shall be disclosed in the applicable periodic or annual report filed with the SEC, and the Committee shall review the substance of any such disclosure and the considerations relating to the compatibility of

such services with maintaining the independence of the accounting firm.

3. Oversee and evaluate the work of the independent accounting firm, including resolution of any disagreement between management and the independent accounting firm regarding financial reporting. . . .

7. Obtain and review reports from the independent accounting firm at least annually regarding: (i) the independent accounting firm's internal quality-control procedures; (ii) any material issues raised by most recent quality-control review, or peer review, of the firm, or by any inquiry or investigation by governmental or professional authorities within the preceding five years respecting one or more independent audits carried out by the firm; (iii) any steps taken to deal with any such issues; and (iv) all relationships between the independent accounting firm and the Corporation. . . .

9. Review reports and other communications as appropriate from the independent accounting firm related to (i) all critical accounting policies and practices used; (ii) all alternative treatments of financial information within GAAP that have been discussed with management, ramifications of the use of such alternative disclosures and treatments, and the treatment preferred by the independent accounting firm; and (iii) other material written communications between the independent accounting firm and management, such as any management letter or schedule of unadjusted differences. . . .

11. Obtain from the independent accounting firm adequate assurances: (i) that Section 10A of the Securities Exchange Act of 1934, as amended by the Sarbanes-Oxley Act of 2002, has not been implicated; and (ii) as to the compliance with (g), (h), (j), (k) and (l) of Section 10A of the Securities Exchange Act of 1934, as amended by the Sarbanes-Oxley Act of 2002.

12. Review with the independent accounting firm any significant problems or difficulties the independent accounting firm may have encountered and any management letter provided by the independent accounting firm and the Corporation's response to that letter, including any restrictions on the scope of activities or access to required information, significant changes to the audit plan and any disagreement with management, which if not satisfactorily resolved would have affected the independent accounting firm's opinion.

Compliance and Reporting

1. Engage independent counsel, accounting consultants or other advisors to advise the Committee in connection with any matter within its duties and responsibilities. The Committee is empowered, without further action by the Board, to cause the Corporation to pay the compensation of such advisors as established by the Committee.

2. Monitor compliance by the employees of the Corporation and any subsidiaries and controlled affiliated entities with applicable legal

requirements and the Corporation's standards of business conduct policies.

3. Review with the Corporation's General Counsel legal matters that may materially affect the financial statements, the Corporation's compliance policies and any material reports or inquiries received from regulators or governmental agencies.

4. Review annually, in consultation with the independent accounting firm and management, the adequacy of the Corporation's internal financial and accounting processes.

5. Prepare and submit, in accordance with the rules of the SEC as modified or supplemented from time to time, a written report of the Committee to be included in the Corporation's annual proxy statement for each annual meeting of the Corporation's stockholders.

6. Review and approve all related-party transactions of the Corporation required to be disclosed pursuant to Item 404 of Regulation S-K.

Internal Audit Function

1. Review with representatives of management and the Director of Internal Audit the charter, organizational structure, budget, resource plans and activities of the internal audit function.

///

///

2. Conduct an annual evaluation of the effectiveness of the internal audit function.

3. Approve decisions regarding the appointment and removal of the Director of Internal Audit.

4. Meet at least quarterly with the Director of Internal Audit.

Other

1. Meet at least quarterly with the Corporation's senior executive officers and the independent accounting firm in separate executive sessions.

2. Review any other matter brought to its attention within the scope of its duties, including any issue of significant financial misconduct.

3. Establish procedures for (i) the receipt, review, retention and treatment of complaints regarding accounting, internal accounting controls or auditing matters, as well as potential or suspected violations of the Corporation's Code of Business Conduct and Ethics; and (ii) the confidential or anonymous submission by employees of the Corporation of concerns regarding questionable accounting or auditing matters, and the receipt and review thereof.

4. Review with the Corporation's Chief Executive Officer and Chief Financial Officer, prior to their quarterly or annual report certification

submission to the SEC, (i) all significant deficiencies in the design or operation of internal controls that could adversely affect the Corporation's ability to record, process, summarize and report financial data, and any material weaknesses in the Corporation's internal controls that they have identified for the Corporation's independent accounting firm; (ii) any fraud, whether or not material, that involves management or other employees who have a significant role in the Corporation's internal controls; and (iii) whether or not there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of the Chief Executive Officer's and the Chief Financial Officer's evaluation thereof, including any corrective actions with regard to significant deficiencies and material weaknesses. . . .

6. In consultation with the Corporation's management, periodically review the adequacy of the Corporation's disclosure controls and procedures. . . .

10. The Committee may take such other actions regarding the Corporation's financial reporting obligations that are in the best interests of the Corporation as the Committee shall deem appropriate or as shall otherwise be required by The Nasdaq Global Select Market or any other applicable laws.

## **SUBSTANTIVE ALLEGATIONS**

*Background*

    59.    Skyworks, with its subsidiaries, is a purported leading developer,

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

manufacturer and provider of analog and mixed-signal semiconductor products and solutions for numerous applications, including aerospace, automotive, broadband, cellular infrastructure, connected home, defense, entertainment and gaming, industrial, medical, smartphone, tablet, and wearables.

60.    In addition to providing "key network technologies," including advanced Wi-Fi, enhanced GPS, and Bluetooth, the Company also has offerings in other market segments, including electric and hybrid vehicles, industrial and motor control, power supply, 5G wireless infrastructure, optical data communication, data center, automotive, smart home, and several other applications.

61.    Some of the Company's key customers include Amazon, Apple General Electric, Google, Microsoft, and Samsung, among others.

62.    As detailed herein, throughout the Relevant Period, the Individual Defendants repeatedly touted the Company's ability to grow its mobile business and capitalize on its potential growth and assured investors that Skyworks was investing in new technologies to diversify its portfolio of offerings, all of which impacted the Company's anticipated revenue for 2025.

**The Individual Defendants' False and Misleading Statements**

63.    On July 30, 2024, the Company issued the 3Q24 Earnings Release, wherein Defendants Griffin and Sennesael assured investors that the Company had a profitable quarter and that anticipated future revenues were promising. Defendant Griffin was quoted in the 3Q24 Earnings Release as stating:

Skyworks generated solid results and strong profitability consistent with our guidance[.] Exiting the June quarter, our mobile business is ramping up while our broad markets business continues to recover. Over the medium-to-long-term, we expect generative AI applications will migrate to the edge, including the smartphone, driving a

meaningful replacement cycle and leading to higher levels of RF complexity.

64.    The 3Q24 Earnings Release also quoted Defendant Sennesael as stating, in relevant part:

> For the September quarter, we expect revenue to be $1.00 billion to $1.04 billion with non-GAAP diluted earnings per share of $1.52 at the mid-point of the revenue range[.] We expect our mobile business to be up approximately 20% sequentially, as demand and supply patterns appear to be normalizing. In broad markets, we expect modest improvement, representing three consecutive quarters of sequential growth. In addition, given our solid capital structure and strong year-to-date cash flow generation, we are announcing another increase to our quarterly dividend.

65.    On the same day, the Company hosted the 3Q24 Earnings Call, wherein Defendant Sennesael, in response to a question about Skyworks' future revenue guidance, stated, in relevant part, "So we only guide 1 quarter at a time, and I would really stick with that. But yes, it's clear that *we do expect further sequential growth going into the December quarter*, but we will guide next quarter on that." (Emphasis added).

66.    On November 12, 2024, the Company issued a press release announcing its financial results for the fourth quarter and full year of 2024 (the "4Q24 Earnings Release"). In the 4Q24 Earnings Release, Defendant Griffin was quoted as touting the Company's revenue growth and future growth prospects, stating, in relevant part:

Skyworks' fourth fiscal quarter revenue grew 13% sequentially, above the midpoint of our guidance[.] For the second year in a row, we generated over $1.6 billion of free cash flow and ended fiscal 2024 with a record 40% free cash flow margin. ***Looking ahead, we believe AI is poised to ignite a transformative smartphone upgrade cycle, propelling the demand for higher levels of RF complexity. We are in the early stages of this multi-year trend and Skyworks is well-positioned to capitalize on it.***

(Emphasis added).

67.    Also on November 12, 2024, the Company hosted an earnings call for investors and analysts to discuss its financial results for the fourth quarter of 2024 (the "4Q24 Earnings Call"). During the 4Q24 Earnings Call, Defendant Sennesael highlighted the Company's financial metrics and business operations during the fourth quarter, stating, in relevant part:

Skyworks revenue for the fourth fiscal quarter of 2024 was $1.025 billion, slightly above the midpoint of our outlook. Mobile was approximately 65% of total revenue up 21% sequentially as we successfully supported the ramp of new products at our mobile customers. Broad markets were approximately 35% of total revenue, up $1 million sequentially. Gross profit was $476 million with gross margin at 46.5%, in line with expectations. Gross margin grew 50 basis points sequentially, reflecting our ongoing cost reduction actions.

Also, during Q4, we further reduced our internal inventory, resulting in 7 consecutive quarters of reductions. Operating expenses were $203

million, reflecting our strategic investments in our technology and product road maps. We delivered $273 million of operating income, translating into an operating margin of 27%. We incurred $2 million of other expenses, and our effective tax rate was 8%, driving net income of $250 million and diluted earnings per share of $1.55, which is $0.03 above our guidance.

During the fourth fiscal quarter, we delivered impressive cash generation, with cash flow from operations at $476 million, capital expenditures at $83 million, resulting in a free cash flow of $393 million or 38% free cash flow margin. For fiscal 2024, we generated well over $1.6 billion of free cash flow, our second year in a row and ended the year with a record 40% free cash flow margin, translating into approximately $10.40 of free cash flow per share and a free cash flow yield of approximately 11.5%. We continue to drive robust cash flow through steady levels of profitability, prudent working capital management and moderating CapEx intensity.

During fiscal Q4, we paid $112 million in dividends. Cash and investments grew to approximately $1.6 billion, and we have $1 billion in debt, providing us with excellent optionality.

68.    During the 4Q24 Earnings Call, Defendant Sennesael went on tout the Company's anticipated future revenue, stating, in relevant part:

///
///

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Now let's move on to our outlook for Q1 of fiscal 2025. We anticipate revenue of $1.050 billion to $1.080 billion, up 4% sequentially at the midpoint.

We expect our mobile business to be up mid-single digits sequentially, driven by seasonal product ramps. In broad markets, we anticipate further modest sequential growth. And a return to year-over-year growth. The pace of the recovery is more measured than we anticipated, given excess inventory in select segments like industrial, automotive, infrastructure and networking.

Gross margin is projected to be 46% to 47%, and we expect operating expenses in the range of $209 million to $215 million, with sequential increases reflecting typical adjustments made at the start of a new fiscal year, including variable compensation accruals. In addition, we are leveraging our strong cash flow generation to invest in technology and product road maps to drive share and increase diversification.

Below the line, we anticipate $3 million in other income an effective tax rate of 12.5% and a diluted share count of approximately 160 million shares. Accordingly, at the midpoint of the revenue range of $1.065 billion we intend to deliver diluted earnings per share of $1.57.

69.    The statements detailed above were materially false and misleading when made because they failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Individual Defendants failed to disclose, *inter alia*, that: (i) the Individual Defendants did not have reliable

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

information on the Company's projected revenue outlook and anticipated growth; (ii) the Individual Defendants had not minimized the risks from macroeconomic fluctuations and smartphone upgrade cycles; (iii) Skyworks' longstanding relationship with Apple did not guarantee that Apple would continue its relationship with the Company for its anticipated launch of the newest iPhone; and (iv) as a result of the foregoing, the Company's public statements regarding its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### *The Truth Emerges*

70.    The truth was revealed on February 5, 2025, when the Company issued the 1Q25 Earnings Release. In the 1Q25 Earnings Release, the Company revealed lower-than-anticipated revenue guidance for the second quarter of 2025. The Company credited these disappointing results to a "competitive landscape" that had "intensified" in recent years. In the 1Q25 Earnings Release, Defendant Sennesael discussed the anticipated revenue guidance for the second quarter and was quoted as stating, in relevant part:

> For the March quarter, we expect revenue between $935 million to $965 million, with non-GAAP diluted earnings per share of $1.20 at the mid-point of the revenue range[.] We anticipate a mid-to-high teens sequential decline in mobile, consistent with historical seasonal patterns. In broad markets, we expect additional sequential and year-over-year growth.
>
> In addition, our board of directors has approved a new $2 billion stock repurchase program as part of our disciplined capital allocation strategy.

71.    On the same day, during the 1Q25 Earnings Call, Defendant Sennesael discussed the first quarter results and anticipated financial results for the second quarter and revealed that Apple planned to reduce its reliance on Skyworks for the iPhone. Defendant Senesael stated, in relevant part:

For the first quarter of fiscal 2025, we demonstrated robust cash generation, with operating cash flow of $377 million, capital expenditures of $39 million and a free cash flow of $338 million representing a 32% free cash flow margin. During fiscal Q1, we distributed $112 million in dividends. Our cash and investment balance increased to approximately $1.75 billion, while we maintain a debt level of $1 billion, providing us with ample financial flexibility.

***Now let's move on to our outlook for Q2 of fiscal 2025. We anticipate revenue of $935 million to $965 million. We expect our mobile business to decline mid- to high teens sequentially, in line with historical seasonality. In broad markets, we anticipate additional sequential growth and a further improvement in year-over-year growth.*** We are seeing positive momentum in booking trends, backlog and sell-through patterns across broad markets. However, inventory headwinds remain acute in industrial and infrastructure.

Gross margin is projected between 45.5% and 46%, which is seasonally adjusted for lower sales volume. We anticipate operating expenses in the range of $220 million to $228 million, utilizing our robust cash flow generation to invest in technology and product road maps. . . .

Before moving into Q&A, I want to briefly reflect on our business and address our strategic partnership with our largest customer. Over the past 25 years, we have built a strong technology company, a leader in RF connectivity for mobile solutions and expanded those RF capabilities with analog and mixed signal expertise in our growing broad markets business. And over the last 18 years, we have benefited from a truly collaborative partnership with our largest customer, who has constantly pushed us to develop innovative high-performance and highly integrated RF solutions.

***We have partnered with that customer since the launch of their first phone, which has resulted in significant content and revenue growth over the years. However, the last couple of years have been challenging as the competitive landscape has intensified. As it relates to the upcoming phone cycle expected to be launched in the fall of 2025, the Skyworks team developed a suite of high-performance RF solutions. Despite our rich product offering, we did not get the result that we targeted. Although we were able to secure multiple sockets including several highly integrated RF modules, our content position is expected to be down 20% to 25%. This decline will start impacting our revenue in the fourth quarter of fiscal '25 and throughout fiscal '26. While we are disappointed with this outcome, we remain steadfast in our commitment to invest and innovate around our technology road maps.***

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

We have already started the development of a new suite of solutions for the next generation phone with an expanding set of products and addressing more opportunities than ever before. In addition, we will continue to pursue growth opportunities with our other mobile customers, although on a selective basis, focusing on those segments of the market that demand high-performance RF. And we will continue to drive our diversification strategy, supported by multiple secular growth trends in broad markets. We expect those opportunities to partially offset the revenue decline at a large customer in fiscal '26 and position us for growth in fiscal '27.

(Emphasis added).

72.    On this news, Skyworks' stock price fell $21.48 per share, or approximately 24%, from a closing price of $87.08 per share on February 5, 2025, to a closing price of $65.60 per share on February 6, 2025.

73.    Analysts also responded to Skyworks' disclosures about its anticipated future guidance. For instance, Stifel, B. Riley Securities, and Mizucho Securities downgraded Skyworks' price target.[2] Moreover, on February 5, 2025, Morningstar issued a reported on its downgrade of Skyworks fair value estimate per share, stating, relevant part:

We observed Skyworks' stock sell off as much as 24% on the news, and we think the reaction is justified. We will now model about $7 of

---

[2] See Muslim Farooque, *Skyworks (SWKS) Crashes 25% as Apple Cuts Supplier Dependence for iPhone 17*, Yahoo! Finance (Feb. 6, 2025), https://finance.yahoo.com/news/skyworks-swks-crashes-25-apple-145859370.html.

RF content in the iPhone 17 for Skyworks in fiscal 2026 and beyond, down from $10-$11 of content earned in prior years and in our prior model. As such, we cut our fair value estimate to $70 per share from $95. . . .

We assign Skyworks a Morningstar Uncertainty Rating of High, considering the cyclical nature of the semiconductor industry and the company's highly concentrated customer base. In our view, Skyworks' greatest risk revolves around customer concentration with Apple, which made up 69% of revenue in fiscal 2024. Although unlikely, it would be a damaging blow to Skyworks if it were to entirely lose its business with Apple. However, Skyworks will face share loss in fiscal 2026 as the company believes it lost 20%-25% of its content within the iPhone 17 series.

Nonetheless, Skyworks will also have to fend off intense competition within wireless, from radio frequency specialists like Qorvo and Broadcom as well as broad wireless leaders like Qualcomm. Even if Skyworks were to retain its share of design wins, Apple, Samsung, and others could wield significant pricing power that could make these design wins less lucrative in the long run. Design wins with other smartphone makers could be less profitable as well, particularly in low-end 4G- and 5G-enabled smartphones. Finally, although Skyworks has done well to diversify a portion of its business into non-handset

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

opportunities, the firm squares off against a host of well-capitalized firms in the analog chip space with decades of design experience.[3]

***Stock Repurchases During the Relevant Period***

74.     According to the Company's public filings, while the price of Company stock was artificially inflated due to the false and misleading statements detailed above, the Individual Defendants caused the Company to repurchase approximately 439,379 shares of its own stock, for a total of approximately $39.5 million during the Relevant Period.

75.     According to the Company's public filings, Skyworks made the following repurchases of its own stock during the Relevant Period:

| Dates of Stock Repurchase | Number of Shares Repurchased | Average Price Per Share on Date of Repurchase | Total Cost of Repurchase |
|---|---|---|---|
| July 27, 2024 to August 23, 2024 | 10,615 | $108.30 | $1,149,604.50 |
| August 24, 2024 to September 27, 2024 | 395 | $107.70 | $52,541.50 |
| October 26, 2024 to November 22, 2024 | 428,369 | $89.42 | $38,304,756 |

76.     Given that the price of Skyworks stock was $65.60 per share on February 6, 2025, after the corrective disclosures, the true value of the 439,379 repurchased

---

[3] Brian Colello, *Skyworks Earnings: Cutting Fair Value to $70 From $95 to Lost RF Content at Apple*, Morningstar (Feb. 5, 2025), https://www.morningstar.com/company-reports/126p2656-skyworks-earnings-cutting-fair-value-to-70-from-95-due-to-lost-rf-content-at-apple.

shares was roughly $28.8 million. Accordingly, the Individual Defendants caused the Company to overpay by approximately $10.7 million to repurchase these shares during the Relevant Period.

***Harm to the Company***

77.    As a direct and proximate result of the Individual Defendants' misconduct, Skyworks has lost and expended, and will lose and expend, millions of dollars.

78.    Such expenditures include, but are not limited to, the legal fees associated with the Securities Class Action filed against the Company and Defendants Griffin and Sennesael, and amounts paid to outside lawyers, accountants, and investigators in connection therewith.

79.    Such expenditures also include, but are not limited to, significant compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

80.    Furthermore, the Securities Class Action has exposed the Company to massive class-wide liability.

81.    Additionally, during the Relevant Period, the Individual Defendants caused the Company to initiate repurchases of its common stock that substantially damaged the Company.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

82.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breach of fiduciary duties by the Individual Defendants.

83.    Skyworks is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

84.    Plaintiff is a current shareholder of Skyworks and was a continuous shareholder of the Company during the period of the Individual Defendants'

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

85.    A pre-suit demand on the Board of Skyworks is futile and, therefore, excused. At the time this action was commenced, the nine-member Board was comprised of Defendants King, Batey, Beebe, Guerin, McBride, McGlade, Schriesheim, and Turcke (the "Director Defendants"), as well as non-party Brace (Brace, together with the Director Defendants, the "Directors"). Accordingly, Plaintiff is only required to show that five Directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

86.    The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

87.    Additionally, each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

88.    Moreover, the Director Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

89.    Director Brace is not disinterested or independent and is therefore incapable of considering a demand. Brace is CEO and President of the Company. Thus, as conceded by Skyworks in the 2025 Proxy, the Company admits that Brace is a non-independent director.

90.    Additionally, each of the Director Defendants received payments, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

91.    All of the Board's current members derive substantial revenue from the Company, control the Company, and are indebted to each other. These conflicts of interest have precluded the Board's current members from calling into question the Director Defendants' conduct.

92.    Moreover, none of the Director Defendants have taken remedial action to redress the conduct alleged herein.

93.    Defendants King, Guerin, McGlade, and Schriesheim served on the Company's Audit Committee during the Relevant Period (the "Audit Defendants") and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, *inter alia*, financial accounting and reporting, the underlying internal controls and procedures over financial reporting, and the audits of the financial statements. At all relevant times, however, the Audit Defendants breached their fiduciary duty to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the Company's business and the adequacy of its internal controls as alleged above. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihoods.

94.    The Director Defendants, as members of the Board, were and are subject

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Directors to also adhere to the Company's standards of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Director Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

95.    Accordingly, a pre-suit demand upon the Board is futile and excused.

## COUNT I

### Against the Individual Defendants for Violations of Section 10(b) of the Exchange Act (15 U.S.C. § 78(j)) and Rule 10b-5 (17 C.F.R. § 240.10b-5)

96.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

97.    The Individual Defendants participated in a scheme with the purpose and effect of defrauding Skyworks. Not only is Skyworks now defending claims that it violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, but the Company itself is also one of the largest victims of the unlawful scheme perpetrated upon Skyworks by the Individual Defendants.

98.    During the Relevant Period, while the price of the Company's stock was artificially inflated as a result of the false and misleading statements issued, the Individual Defendants caused the Company to overpay by approximately $10.7 million to repurchase approximately 439,379 shares of Skyworks common stock.

99.    The Individual Defendants also individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct designed to falsify

the Company's press releases, public statements, and periodic and current reports filed with the SEC.

100.   The Individual Defendants employed devices, schemes, and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Skyworks not misleading.

101.   The Individual Defendants, as directors and officers of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to and did control the conduct complained of herein and the content of the public statements disseminated by Skyworks.

102.   The Individual Defendants acted with scienter during the Relevant Period, in that they either had actual knowledge of the scheme and the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were the top executives of the Company, or received direct briefings from them, and were therefore directly responsible for the scheme set forth herein and for the false and misleading statements and/or omissions disseminated to the public through filings with the SEC.

103.   The Individual Defendants, through their violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, have caused the Company to expend approximately $39.5 million in the repurchase of Skyworks stock at artificially inflated prices and have exposed the Company to millions of dollars in potential class-wide damages in the Securities Class Action.

104.   By virtue of the foregoing, the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

105.   Plaintiff, on behalf of Skyworks, has no adequate remedy at law.

## COUNT II
### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a))

106.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.   The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act. By virtue of their positions of control within the Company, the Individual Defendants had the authority to cause the Company to issue materially false and misleading statements, and to repurchase Skyworks stock at prices artificially inflated by those materially false and misleading statements.

108.   Plaintiff, on behalf of Skyworks, has no adequate remedy at law

## COUNT III
### Against the Individual Defendants For Breach of Fiduciary Duty

109.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

110.   The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

111.   The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

112.   The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual

Defendants breached their fiduciary duties of loyalty and good faith by failing to implement and monitor adequate internal controls over the Company's financial reporting and, as a consequence, issuing or permitting the issuance of materially false and misleading statements in the Company's SEC filings and other public disclosures. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

113.    Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and omissions of material fact that failed to disclose, *inter alia,* that: (i) the Individual Defendants did not have reliable information on the Company's projected revenue outlook and anticipated growth; (ii) the Individual Defendants had not minimized the risks from macroeconomic fluctuations and smartphone upgrade cycles; (iii) Skyworks' longstanding relationship with Apple did not guarantee that Apple would continue its relationship with the Company for its anticipated launch of the newest iPhone; and (iv) as a result of the foregoing, the Company's public statements regarding its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

114.    In further breach of their fiduciary duties, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and omissions of material fact referenced herein.

115.    Moreover, in further breach of their fiduciary duties during the Relevant Period, the Individual Defendants willfully or recklessly caused the Company to repurchase millions of shares of its own common stock at artificially inflated prices before the fraud was exposed.

116.    Furthermore, five of the Individual Defendants engaged in insider sales during the Relevant Period while the price of the stock was artificially inflated, netting millions of dollars in proceeds for themselves.

117.   The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. The Individual Defendants, in good faith, should have taken appropriate action to correct the scheme alleged herein and to prevent it from continuing to occur.

118.   As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

119.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

120.   Plaintiff, on behalf of Skyworks, has no adequate remedy at law.

## COUNT IV
### Against the Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty

121.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

122.   By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breach of their fiduciary duties.  In so doing, the Individual Defendants have each aided and abetted, conspired, and

schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

123.   Plaintiff, on behalf of Skyworks, has no adequate remedy at law.

**COUNT V**
**Against the Individual Defendants**
**For Unjust Enrichment**

124.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

125.   By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Skyworks.

126.   The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Skyworks that were tied to the performance or artificially inflated valuation of Skyworks, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

127.   Plaintiff, as a shareholder and a representative of Skyworks, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

128.   Plaintiff, on behalf of Skyworks, has no adequate remedy at law.

**COUNT VI**
**Against the Individual Defendants**
**For Abuse of Control**

44
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

129.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

130.   The Individual Defendants misconduct alleged herein constituted an abuse of their control over the Company, for which they are legally liable.

131.   As a direct and proximate cause of the Individual Defendants' abuse of control, the Company has sustained substantial damages.

132.   Plaintiff, on behalf of Skyworks, has no adequate remedy at law.

## COUNT VIII
### Against the Individual Defendants
### For Waste of Corporate Assets

133.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

134.   The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue.   It resulted in continuous, connected, and ongoing harm to the Company.

135.   As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying and colleting excessive compensation and bonuses; (ii) causing the Company to repurchase over 400,000 shares of its own common stock at artificially inflated prices; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Class Action.

136.   Additionally, the Individual Defendants caused the Company to repurchase shares of its own common stock at artificially inflated prices, thereby wasting the Company's assets.

137.   As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

138.   Plaintiff, on behalf Skyworks, has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.     Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.     Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.     Awarding punitive damages;

D.     Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: April 11, 2025

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Alex J. Tramontano*
Betsy C. Manifold
Rachele R. Byrd
Alex J. Tramontano
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com

**RIGRODSKY LAW, P.A.**
Vincent A. Licata
Leah B. Wihtelin
825 East Gate Boulevard, Suite 300

46
VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Garden City, NY 11530
Telephone: (516) 683-3516
Email: va@rl-legal.com
Email: lw@rl-legal.com

*Attorneys for Plaintiff*

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## VERIFICATION

  I, Robert Groppo, am a plaintiff in the within action. I have reviewed the allegations made in this Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

  I declare under penalty of perjury that the foregoing is true and correct.  Executed this 31__ day of March, 2025.

DocuSigned by:

*Robert Groppo*

0CA489E6C44D45C...

Robert Groppo